***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stephenson. The appealing party has shown good grounds to reconsider the evidence; therefore, the Full Commission MODIFIES and AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the plaintiff-employee and defendant-employer on November 22, 2000 and September 4, 2001.
3. On November 22, 2000 and September 4, 2001 Casualty Reciprocal Exchange/James C. Greene Co., was the carrier at risk.
4. Plaintiff's average weekly wage on November 22, 2000 was $627.13 and $602.91 per week on September 4, 2001.
5. Plaintiff's medicals concerning this claim are admitted into evidence as Stipulated Exhibit # 2. These include the following providers:
a. Chiropractic Partners;
b. Triangle Orthopaedics;
c. Dr. William V. Lorimer;
d. Letter from Beth Bennett.
6. Defendant's Answers' to Plaintiff's Interrogatories are admitted into evidence as Stipulated Exhibit #3.
7. Plaintiff's Answers' to Defendant's Interrogatories are admitted into evidence as Stipulated Exhibit # 4.
8. The following Industrial Forms are admitted into evidence as Stipulated Exhibit # 5:18, 19, 22, 61, 33 33R.
9. The issues to be determined by the Full Commission are whether the plaintiff sustained a compensable injury, and if so, what, if any, benefits is he entitled.
10. The depositions of Gary Dietz and Dr. Raphael Orenstein are a part of the evidentiary record in this case.
 ***********
Based on the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On November 22, 2000 plaintiff was twenty-eight (28) years old and employed as a mechanic with defendant-employer. Plaintiff's duties consisted of removing and replacing and rebuilding vehicle transmissions. Plaintiff began work with defendant-employer in early 1998.
2. Plaintiff mainly performed "RR" work when he first started working for defendant-employer. This involved removing transmissions weighing approximately 150 to 250 pounds, and repairing them. Although plaintiff could use a jack, the position still entailed heavy lifting.
3. In mid-1999 to 2000, plaintiff began to perform less "RR" work and concentrated on rebuilding transmissions. Those duties required less heavy lifting but were more highly skilled.
4. Prior to November 20, 2000 plaintiff had experienced occasional back pain. Plaintiff had taken over the counter medications which relieved this pain and did not interfere with his work.
5. On November 22, 2000, plaintiff was bent over sliding a transmission across the floor while at work when he suddenly felt a pop in his back. Plaintiff finished working and on the way home that day he began to experience severe, jabbing pain in his lower back with spasms.
6. The next day was Thanksgiving and plaintiff went to the home of Martin Terry, owner of defendant-employer, to pick up a turkey. While there plaintiff mentioned to a co-worker, Barry Perry, that he was experiencing severe low back pain but did not know the source.
7. Plaintiff continued to feel severe back pain during Thanksgiving vacation. By November 27, 2000 plaintiff's symptoms had not improved so he called his family physician, Dr. Lorimer, requesting a referral to a back specialist. Dr. Lorimer prescribed ibuprofen and arranged for plaintiff to go to Triangle Orthopaedic Associates in Durham.
8. Plaintiff did not immediately report his November 22, 2000 injury to his supervisor, Martin Terry, due to his fear of retaliation for pursuing a workers' compensation claim. Plaintiff's fear of retaliation was based on a previous statement of Mr. Terry wherein he referred to another employee in a manner that plaintiff had interpreted to mean that Mr. Terry did not like employees to file workers compensation claims. Plaintiff also thought his back symptoms would quickly resolve.
9. On December 4, 2000, plaintiff sought treatment from Debra Holmes, Physician's Assistant for Dr. Kyle Black, Jr. of Triangle Orthopaedics. Plaintiff informed Ms. Holmes he did a lot of heavy lifting in his job with defendant-employer, but could recall no specific incident. Plaintiff was diagnosed with low back pain with referred pain to the right lower extremity. Ms. Holmes prescribed Skelexin, Vicodin, a Medrol dose pack and restricted plaintiff to not lift over twenty (20) pounds. Plaintiff returned to work after Thanksgiving.
10. On December 11, 2000 plaintiff began receiving physical therapy. Plaintiff was given a thirty (30) pound lifting restriction and continued taking Ibuprofen and Vicodin.
11. Plaintiff began treatment with Dr. Raphael Orenstein, a physiatrist with Triangle Orthopaedic Association, on January 12, 2001. Plaintiff's pain was sharp, stabbing, aching throbbing, pulling and piercing and went down the right leg to the heel. Plaintiff also experienced numbness and weakness in the right leg.
12. On January 25, 2001 and May 3, 2001 plaintiff underwent two epidural injections performed by Dr. Orenstein. The first injection provided some temporary relief but the second one seemed to increase his pain.
13. Plaintiff underwent a second round of physical therapy beginning February 8, 2001. An April 16, 2001 MRI of the lumbar spine revealed mild changes at L5-S1, with a minimal degree of bulging and a very mild scoliotic curvature to the left.
14. Dr. Orenstein referred plaintiff to Dr. Krasnov, a chiropractor. Plaintiff completed this course of treatment on August 23, 2001. Plaintiff did not inform Dr. Krasnov he had been injured at work because plaintiff still thought the back pain would resolve.
15. Plaintiff has continued to experience severe back pain since November 22, 2000. Mr. Terry and plaintiff's co-workers were aware of plaintiff's back pain and lifting limitations. Plaintiff occasionally missed work for physician and physical therapy appointments. During those times, Mr. Terry paid plaintiff for a regular work-week and did not deduct time plaintiff missed.
16. On July 17, 2001, plaintiff purchased a back brace on defendant-employer's account with Mr. Terry's consent. Plaintiff wore the back brace while at work.
17. On September 4, 2001, plaintiff was replacing a subframe, or cradle, in a Ford Taurus and was lining the subframe up under the car at head level, when he felt a pop in his back. The subframe weighed between fifty (50) and seventy-five (75) pounds. At the same time he felt the pop, plaintiff also felt severe pain shooting down both of his legs. Plaintiff had to sit down a moment to get his composure back.
18. Plaintiff continued to work the rest of the day on September 4, 2001, although he was experiencing a lot of pain. At this time, plaintiff informed Mr. Terry that his back hurt. Plaintiff went home after work, laid down and rested the rest of the evening.
19. On September 5, 2001 plaintiff went back to work but only worked half the day because of the back pain. Plaintiff saw Dr. Lorimer on September 6, 2001 with back pain and bilateral leg pain, right greater than left. Dr. Lorimer referred plaintiff back to Triangle Orthopaedics and wrote a note placing plaintiff out-of-work until orthopedic evaluation.
20. On September 7, 2001 plaintiff's father, Glenn Kimbrough, Sr., gave Dr. Lorimers' note to Mr. Terry and told Mr. Terry that plaintiff had hurt his back at work. Mr. Terry handed the note back to plaintiff's father informing him he did not need it because he had always paid plaintiff for days out.
21. Mr. Terry became angry after plaintiff's fathers' visit because Mr. Kimbrough, Sr. had informed Mr. Terry plaintiff should have been paid on workers' compensation. Mr. Terry called plaintiff and informed him of the conversation after he calmed down. At this time, plaintiff had not formally filed a workers' compensation claim and Mr. Terry did not question plaintiff as to whether he had gotten hurt at work.
22. On September 10, 2001 plaintiff again sought treatment from Dr. Orenstein. Plaintiff told Dr. Orenstein he had been hurt at work putting a car together on September 4, 2001. This time the pain was similar, but more severe and down both legs. Dr. Orenstein prescribed Percocet and a Prednizone taper and referred plaintiff to Dr. Wilson for a discogram. Dr. Orenstein wrote a note, excusing plaintiff from work until the evaluation with Dr. Wilson scheduled for September 14, 2001.
23. Dr. Wilson saw plaintiff on September 14, 2001 and diagnosed him with chronic mechanical back pain, leg pain and MRI with bulging at L5-S1. Plaintiff was scheduled for a discogram on October 1, 2001. Dr. Wilson also provided an out-of-work note until plaintiff underwent the discogram.
24. On September 14, 2001 plaintiff discussed both his work-related injuries with Mr. Martin Terry. This included the November 22, 2000 injury and the September 4, 2001 injury. Plaintiff also submitted the physician notes keeping him out of work through October 1, 2001.
25. Plaintiff received follow-up care from Dr. Wilson on October 25, 2001. At that time the diagnosis was L5-S1 discogenic back pain with minimal to moderate degenerative changes with circumferential and annular tearing. Plaintiff underwent percutaneous nucleoplasty at L5-S1, because it would be less invasive than surgery, but this did not provide any appreciable change. Plaintiff was out of work through December 18, 2001. Following that date, plaintiff was scheduled for surgery with Dr. Dimmig, an orthopaedist with Triangle Orthopaedic.
26. Dr. Orenstein, plaintiff's treating physiatrist, opined that plaintiff's November 22, 2000 and September 4, 2001 injuries were more likely than not the cause of symptoms for which plaintiff received treatment after those dates.
27. The Full Commission find by the greater weight of the competent evidence that plaintiff sustained injuries by accident in the form of specific traumatic incidents to his back on November 22, 2000 and on September 4, 2001. As a result of these injuries he has been unable to work or earn wages from September 6, 2001, and continuing. Prior to this date, plaintiff received his regular wages for days missed from work.
28. Plaintiff did not notify defendant-employer of the November 22, 2000 injury by accident as being work-related until September 14, 2001. The Full Commission finds that plaintiff's fear of retaliation was an unreasonable excuse to delay timely reporting of his November 22, 2000 injury by accident. Plaintiff's observations that one employee's workers' compensation claim was the subject of derision is not accepted as reasonable grounds for the untimely filing of his November 22, 2000 claim, particularly as plaintiff also attributed the delay to his belief that his pain would resolve. Plaintiff timely notified defendant-employer of his September 4, 2001 injury by accident.
29. At the time of the close of the evidentiary record by the deputy commissioner, plaintiff was still unable to work and had not yet reached maximum medical improvement.
30. Although the defendants requested medical notes from plaintiff's physician, Dr. Krasnov, on December 4, 2001 without plaintiff's permission or copying plaintiff's counsel, the Full Commission, in its discretion, will not impose sanctions.
31. Plaintiff's average weekly wage on September 4, 2001 of $602.91 yields a weekly compensation rate of $401.96.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On November 22, 2000 and September 4, 2001, plaintiff sustained compensable injuries by accident to his back arising out of and in the course of his employment with defendant-employer. N.C.G.S. § 97-2(6).
2. Plaintiff failed to timely report his November 22, 2000 injury by accident to defendant-employer; thus, his claim for benefits related to this injury by accident is barred. N.C.G.S. § 97-22.
3. As a result of plaintiff's injuries, he is entitled to temporary total disability at the rate of $401.96 per week from September 6, 2001 and continuing until further Order of the Commission. N.C.G.S. § 97-29.
4. Plaintiff is entitled to have defendants pay all medical expenses incurred by plaintiff as a result of his compensable injury by accident for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or lessen plaintiff's period of disability. N.C.G.S. § 97-25.
5. Plaintiff is not entitled to sanctions against defendants. North Carolina Industrial Commission Workers' Compensation Rule 802.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms and modifies the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants shall pay temporary total disability to plaintiff $401.96 per week from September 6, 2001 and continuing until further Order of the Commission. Those amounts which have accrued shall be payable in a lump sum.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of his compensable injury by accident on September 4, 2001, when bills for same shall have been submitted to the Industrial Commission according to Industrial Commission procedures.
3. A reasonable attorney's fee of twenty-five percent (25%) of the lump sum compensation awarded plaintiff in Paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be deducted from those sums due plaintiff and payable directly to plaintiff's counsel. Thereafter, every fourth check shall be payable directly to plaintiff's counsel.
4. Defendants shall pay the costs due the Commission.
This the ___ day of March 2003.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER